**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

WILLIAM THOMAS DAVIS,

   Petitioner,

  v.        **Civil Action No. 5:09cv34**
            **Criminal Action No. 5:08cr21**
UNITED STATES OF AMERICA,  **(Judge Stamp)**

   Respondent.

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

On March 27, 2009, the *pro se* petitioner filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody. (Dkt.# 40). The Government was ordered to answer petitioner's motion on March 31, 2009. (Dkt.# 43). The Government filed its response on May 22, 2009.[1] Petitioner filed his Reply to the Government on June 22, 2009. (Dkt.# 49). Nine and one half months later, on April 5, 2010, without seeking prior leave of the Court, petitioner filed a Supplemental Motion to Petitioner's Petition Under Title 28 U.S.C. § 2255. (Dkt.# 57). On May 5, 2010, the Government filed a Response of the United States to Petitioner's Supplemental Motion Made Pursuant to Title 28, U.S.C. § 2255. (Dkt.# 59).

### II. FACTS

A. **Conviction and Sentence**

On April 2, 2008, petitioner signed an amended plea agreement by which he agreed to waive the right to have his case presented to a Federal Grand Jury, and plead guilty to Count One of an Information, charging him with being a Felon in Possession of a Firearm, in violation of Title 18,

---

[1] On April 28, 2009, the Government requested an extension of time in which to respond (Dkt.# 45). By Order entered on April 29, 2009, the extension was granted. (Dkt.# 46).

United States Code, § 922(g)(1).  (Dkt.# 23).  The petitioner also waived his right to appeal and to collaterally attack his sentence within the maximum provided in the statute of conviction. Specifically, the petitioner's plea agreement contained the following language regarding his waiver:

> 14.    The defendant is aware that Title 18, United States Code, Section 3742 affords him the right to appeal the sentence imposed.  Acknowledging all this, the defendant knowingly makes the following waiver of his appellate rights in exchange for the concessions made by the United States in this plea agreement: (1) The defendant knowingly waives the right to appeal his sentence within the maximum provided in the statute of conviction (or the manner in which that sentence was determined) on the grounds set forth in Title 18, United States Code, Section 3742 or on any ground whatever, in exchange for the concessions made by the United States in this plea agreement; and (2) the defendant also waives his right to challenge his sentence, or the manner in which it was determined, in any collateral attack, including, but not limited to, a motion brought under Title 28, United States Code, Section 2255.

Dkt.# 23 at 5.

On April 2, 2008, the petitioner entered his plea in open court.  After being sworn, petitioner was advised by the Court that the oath he had taken meant he must tell the truth.  (Plea transcript, Dkt.# 36 at 3).  The Court instructed him to ask if there was anything he did not understand during the hearing, and to feel free to consult with counsel at any time. (Id.).  Petitioner testified that he was forty-one years old, a high school graduate with "a couple years of college for industrial electronics, am a licensed electrician . . . [with] some ASE certifications in auto mechanics]."  (Id. at 4).  When asked if he had consumed any medicine, drugs or alcohol within the previous 24 hours, petitioner advised the Court that he had taken his daily dose of Prozac 20 mg that morning, as prescribed by his physician at the Northern Regional Jail. (Id. at 4 - 5).  He denied feeling any adverse effects from the medication.  (Id. at 5).  When asked by the Court whether he had ever been treated for any mental illness or addiction to narcotic drugs of any kind, he stated that he had been treated by the Northwood Health System for drug addiction and depression, approximately six months earlier.

(Id.).  He testified that he understood the purpose of the plea hearing that day, and denied having any hearing impairment or other physical disability that would prevent his full participation in the hearing.  (Id.).  He also testified that he could read, write and understand English.  (Id. at 6).

Petitioner advised the Court that he understood and agreed with all the terms and conditions of the amended plea agreement; had gone over it with his attorney before signing it; and that his attorney had answered any questions he had about it. (Id. at 11).  He denied having any other "deals or side agreements with the Government," not contained within the plea agreement.  (Id.).  The Court asked petitioner if he understood that the Court was not bound by any recommendation or stipulation contained within the plea agreement, and if the Court later discovered, based upon an "independent investigation by the probation officer or on any other evidence" that it could not go along with the recommendations or stipulations of the agreement, that petitioner would still be bound by his plea agreement and would not have a right to withdraw it.  Petitioner answered "Yes, I do." (Id.).  The Court specifically asked  petitioner if he understood the waiver of appellate and post-conviction relief rights and petitioner said that he did. (Id. at 12 and 16).  However, the court advised petitioner he waived his right to seek post conviction relief except for claims of ineffective assistance of counsel, sentence above a statutory maximum, and sentence for an unconstitutionally impermissible purpose. (Id.).  The Court asked petitioner's counsel if he believed petitioner understood the waiver of appellate and post-conviction relief rights and counsel said that he did. (Id. at 12).

The Court explained that the maximum sentence petitioner would exposed to would not be more than 10 years incarceration with a period of supervised release not to exceed three years.  (Id. at 13 - 14).  Petitioner said that he understood.  (Id. at 15).  The Court asked then asked petitioner if he understood that the Court was not going to be able to determine what sentence would apply

until after the PreSentence Investigation Report ("PSR") was completed, and petitioner, his counsel, and the Government all had an opportunity to review and make any objections to it, and petitioner stated he understood. (Id. at 15). The Court explained the concept of relevant conduct to petitioner, advising him that it could take into account, when calculating his sentence, any conduct, circumstances or injuries relevant to his crime, and petitioner said that he understood. (Id.). Petitioner further testified that he understood that his sentence could be enhanced if it was later determined that he had certain prior convictions, including any crime of violence. (Id.). Petitioner further indicated that he understood that the Court had the authority, in some circumstances, to depart from the advisory guidelines and impose a sentence either more or less severe than that called for by the Guidelines. (Id. at 16).

The Court then reviewed all the rights petitioner was giving up by pleading guilty. (Id. at 16 - 21). During the plea hearing, the Government presented the testimony of James E. Sirbaugh, Special Agent with Alcohol, Tobacco and Firearms, to establish a factual basis for the plea. (Id. at 21 - 31). Defense counsel conducted a brief cross-exam of the witness. (Id. at 29 - 31). The petitioner did not contest the factual basis of the plea.

After the Government presented the factual basis of the plea, the petitioner advised the Court that he was guilty of Count 1 of the Information. (Id. at 32). The petitioner further stated under oath that no one had attempted to force him to plead guilty, and that he was pleading guilty of his own free will. (Id.). In addition, he testified that the plea was not the result of any promises other than those contained in the plea agreement. (Id.). Petitioner denied that anyone had promised or predicted to him what his exact sentence would be. (Id.). He stated that he understood that no one could know yet what his exact sentence would be until the PSR was completed and then analyzed

under the advisory guidelines along with other sentencing factors. (Id. at 32 - 33). When asked if his attorney had adequately represented him, he stated "[y]es, he most certainly has." (Id. at 33). He further stated that his attorney had left nothing undone. (Id). Finally, petitioner said that he was in fact guilty of the crime to which he was pleading guilty. (Id.).

At the conclusion of the hearing, the Court determined that the plea was made freely and voluntarily, that the petitioner understood the consequences of pleading guilty, and that the elements of the crime were established beyond a reasonable doubt. (Id.). The petitioner did not object to the Court's finding.

On July 1, 2008, the petitioner appeared before the Court for sentencing. After considering several factors, including the circumstances of the crime, the defendant, his criminal history, and the sentencing objectives of punishment, the Court sentenced the petitioner to a term of 180 months imprisonment.

**B.** **Appeal**

Petitioner did not pursue a direct appeal.

**C.** **Federal Habeas Corpus**

**Petitioners' Contentions (Dkt.# 40)**

Petitioner's claims are re-ordered here for clarity. Petitioner contends that:

1) the Government breached the plea agreement;

2) counsel was ineffective because:

    a) he failed to prevent the miscarriage of justice that occurred when petitioner's plea agreement was revised just before the plea hearing, and petitioner was given insufficient time in which to review and fully understand its consequences;

    b) he failed to fully investigate petitioner's predicate offenses for the Armed Career

Criminal ("ACC") enhancement and therefore was unprepared for and ineffective at the sentencing hearing;

c) at sentencing, counsel failed to object when petitioner received a 15-year sentence after being promised that the maximum sentence he could receive was 10 years;

d) at sentencing, counsel failed to object to the miscarriage of justice that occurred when petitioner's plea was rendered involuntary by the Government's breach of the plea agreement;

e) at sentencing, counsel failed to argue for a downward departure from the sentencing guidelines based on petitioner's substantial assistance, a violation of his due process rights; and

f) counsel failed to file a notice of appeal on his behalf after promising to do so.

Petitioner requests "specific performance" of his original plea agreement promise of a maximum 10-year sentence, and any other relief the Court might find appropriate.

### Government's Response (Dkt. # 48)

The Government contends that:

1) defense counsel was not deficient in failing to insist that the court impose a sentence of 10 years or less as contemplated by the plea agreement;

2) the record does not reflect that petitioner ever requested his counsel file an appeal on his behalf and petitioner does not allege that any writing exists to memorialize such a request; if such a request was made orally, then an evidentiary hearing should be held solely on that issue;

3) defense counsel was not deficient for failing to request an extension of time to allow the petitioner to more fully consider the amended plea;

4) petitioner's claims regarding counsel's alleged failure to obtain necessary information about his prior criminal history and the significance of any such information are speculative, unfounded and without merit;

5) counsel was not ineffective for failing to argue for a downward departure for substantial assistance to the authorities; and

6) petitioner's due process rights were not violated by receiving the Armed Career Criminal enhancement.

**Petitioner's Reply (Dkt.# 49)**

Petitioner reiterates his previous claims and refutes the Government's arguments, asserting that:

1) regarding the Government's claim that he never attempted to withdraw his plea, petitioner contends that he relied on advice of counsel, who assured him that the "appeals court" would "take care of" the ACC enhancement;

2) regarding counsel's failure to file a notice of appeal, petitioner avers that his counsel told him that his sentence "would automatically be reviewed by a higher court that would remove the ACC enhancement;"petitioner agrees with the Government's suggestion that the issue of whether his lawyer agreed to file a notice of appeal on his behalf be resolved by an evidentiary hearing;

3) at the Rule 11 hearing, when the amended plea agreement was first presented, petitioner believed it had only been amended to correct a clerical error, and he only signed it based on counsel's assurances that "there was nothing to worry about" in it. Further, he only answered the Court's questions about the agreement in the affirmative because that was what counsel instructed him to do;

4) petitioner offers additional case law to refute Government's claim that his predicate offense argument is speculative, unfounded, and without merit;

5) petitioner concedes that the Government was not obligated to provide him with a U.S.S.G. § 5K1.1 motion for providing substantial assistance, but reiterates his claim that counsel should have made an effort to secure one for him anyway; and

6) petitioner reiterates his claim that his due process rights were violated, because his co-defendant, who he concedes did not have a criminal history, although exposed to a sentence of up to ten years, only received 12 months, whereas petitioner got 15 years for the same crime. Petitioner contends that counsel's failure to present this argument on his behalf is further proof of his deficient performance.

**Petitioner's Supplement to Motion to Vacate Pursuant to 28 U.S. C. § 2255 (Dkt.# 57)**

Petitioner offers "new information," "recently learned," in support of his earlier claims:

1) Petitioner offers a recent 5th Circuit Court of Appeals case, U.S. v. Self, 596 F.3d 245; 2010 U.S. App. LEXIS 2289 5th Cir. 2010), in support of his argument that counsel was ineffective for permitting the Government to breach his plea agreement;

2) Petitioner attaches a letter from the AUSA that "shows that Petitioner was providing

assistance to authorities," and that "states that the government is pleased with Petitioner's willingness to cooperate and provide information," in support of his claim of counsel's ineffectiveness for not "prompt[ing] the Prosecutor to write a § 5K1.1 motion which would ask the court for a downward departure for providing substantial assistance to authorities."

**Response of the U.S. to Petitioner's Supplemental Motion Made Pursuant to 28 U.S.C. § 2255 (Dkt.# 59)**

1) The 5th Circuit Court of Appeals case that petitioner offers as newfound support of his argument that his plea agreement was breached and should be specifically enforced, is inapposite. The Self case involved a plea agreement with an agreed sentence; petitioner's plea agreement left the sentencing to the Court, as informed by the PSR. Further, the precipitating event in Self was the Court's rejection of the agreed sentence; here, the Court accepted petitioner's plea and petitioner did not attempt to withdraw the plea. The Self case did not involve a breach of the plea agreement.

2) The letter from the AUSA that petitioner offers as proof that he *provided* substantial assistance proves no such thing; it merely indicates that petitioner was *willing* to do so; no assistance was actually ever rendered. Despite petitioner's apparent willingness to provide it, law enforcement opted, for whatever reason, not to take advantage of the offer. The Government does not move for a reduction under § 5K1.1 unless, in its estimation, it has been earned. Therefore, since substantial assistance was not provided, defense counsel cannot have been ineffective for not seeking such a motion.

**D.    Recommendation**

Based upon a review of the record, the undersigned recommends that the petitioner's §2255 motion be denied and dismissed from the docket because petitioner knowingly, intelligently, and voluntarily waived the right to collateral attack and because his ineffective assistance of counsel claims, excepted from the waiver, do not merit relief because they have no basis in fact or law.

**III.  ANALYSIS**

**A.    Petitioner's Burden of Proof**

"A petitioner collaterally attacking his sentence or conviction bears the burden of proving his sentence or conviction was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the

maximum authorized by law, or that the sentence otherwise is subject to collateral attack. 28 U.S.C. § 2255. A motion collaterally attacking a petitioner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." Sutton v. United States of America, 2006 WL 36859 *2 (E.D.Va. Jan. 4, 2006).

**B.      Waiver of Right to File § 2255 Collateral Attack**

"[T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system.   Properly administered, they can benefit all concerned." Blackledge v. Allison, 431 U.S. 63, 71 (1977).  However, the advantages of plea bargains "can be secure . . . only if dispositions by guilty plea are accorded a great measure of finality." Id.  "To this end, the Government often secures waivers of appellate rights from criminal defendants as part of their plea agreement."  United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005).

In United States v. Attar, 38 F.3d 727, 731 (4th Cir. 1994), the Fourth Circuit found that "a waiver-of-appeal-rights provision in a valid plea agreement is enforceable against the defendant so long as it is the result of a knowing and intelligent decision to forgo the right to appeal."  The Fourth Circuit then found that whether a waiver is knowing and intelligent "depends upon the particular facts and circumstances surrounding [its making], including the background, experience, and conduct of the accused."  Id.  After upholding the general validity of a waiver-of-appeal-rights provision, the Fourth Circuit noted that even with a waiver-of-appeals-rights provision, a defendant may obtain appellate review of certain limited grounds.   Id. at 732.   For example, the Court noted that a defendant "could not be said to have waived her right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race."  Id.  Nor did the Court believe that a defendant "can fairly be said to have

waived his right to appeal his sentence on the ground that the proceedings following the entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel." Id.

Subsequently, in Lemaster, the Fourth Circuit saw no reason to distinguish between waivers of direct appeal rights and waivers of collateral attack rights. Lemaster, 403 F.3d at 220. Therefore, like the waiver-of-appeal-rights provision, the Court found that the waiver of the right to collaterally attack a sentence is valid as long as it is knowing and voluntary. Id. And, although the Court expressly declined to address whether the same exceptions apply since Lemaster failed to make such an argument, the court stressed that it "saw no reason to distinguish between waivers of direct-appeal rights and waivers of collateral-attack rights." Id. at n. 2.

The unpublished *per curiam* decision in United States v. Morris, 247 Fed. Appx. 459; 2007 U.S. App. LEXIS 21976 (2007) indicates that when the district court conducts a thorough Rule 11 colloquy and the defendant specifically waives the right to appeal any sentence below the statutory maximum, the record established that the defendant made a knowing and voluntary waiver of rights.

Similarly here, the district court conducted a Rule 11 colloquy and the petitioner specifically testified that he understood that, incident to his plea agreement, he was waiving his right to appeal his sentence or to collaterally attack it, if it was within the statutory maximum.[2] (Plea Hearing Transcript, (Dkt.# 36 at 12 and 16).

The statute of conviction, 18 U.S.C. §§ 922(g)(1) and 924(a)(2), felon in possession of a firearm has a penalty of a maximum period of incarceration of 10 years imprisonment, except if the

---

[2] Although in the Rule 11 colloquy, the Court actually said that pursuant to the "plea agreement, you have agreed to waive the right to appeal any sentence that is imposed upon you," the appellate waiver in petitioner's plea agreement specifies that he "waives the right to appeal his sentence within the maximum provided in the statute of conviction (or the manner in which that sentence was determined)[.]" Dkt.# 23 at 5.

person convicted "has three previous convictions by any court referred to in section 922(g)(1) ... for a violent felony or serious drug offense, or both, committed on occasions different from one another."  With such qualifying prior convictions the person convicted is subject to a mandatory minimum term of imprisonment of fifteen years.

Petitioner's plea agreement stipulated that his Base Offense level would be determined based on his prior felony convictions and whether any of them were qualifying "crimes of violence" as contemplated by U.S.S.G. § 2K2.1(a)(2) and (a)(4)(A) and Application Note 10, and that the Court was not bound by the parties' stipulation but would make its own determination of the matter, with the help of the PSR.  As reflected in his PSR, pursuant to 18 U.S.C. §§ 922(g)(1) and 924 (e)(1), petitioner's  criminal history qualified him as an Armed Career Criminal with an enhanced penalty, giving him a Guideline Range of 15 years to life imprisonment and subjecting him to the mandatory minimum sentence of 15 years of imprisonment.   The sentence he received was 15 years imprisonment.  From the totality of the circumstances surrounding the provisions in the plea agreement, the undersigned finds that petitioner knowingly and voluntarily waived the right to collaterally attack the guilty plea and to file this § 2255 motion.

During the Court's colloquy regarding the waiver of post conviction relief, the Court explicitly excepted certain claims from the waiver.  Specifically, the colloquy contained the following waiver:

> THE COURT: And do you understand that under paragraph 14 at page 5 of the plea agreement, you have agreed to waive the right to appeal any sentence that is imposed upon you and also waive the right to seek any postconviction relief, including that under the so-called habeas corpus statute, subject to certain conditions, such as ineffective assistance of counsel, sentence above a statutory maximum, and sentence for an unconstitutionally impermissible purpose.  And do you understand that waiver?

11

THE DEFENDANT: Yes, I do.

. . .

THE COURT: And, again, do you understand that under the waiver that is contained in paragraph 14 at page 5, you have waived the right to seek - - to appeal the sentence and also to seek postconviction relief subject to the exceptions that I went over with you. Do you understand that?

THE DEFENDANT: Yes, your Honor."

(Id.).

The only post conviction claims that the petitioner did not waive, and which would be cognizable in a Motion Under 28 U.S.C. §2255, are claims of ineffective assistance of counsel, sentence above a statutory maximum, and sentence for an unconstitutionally impermissible purpose[3].

Petitioner claims, *inter alia,* that the Government breached the plea agreement by seeking a sentence that exceeded the statutory maximum set forth in the plea agreement. The Government did not breach the plea agreement. It merely provided information it had and which was confirmed by the PSR with respect to petitioner's prior criminal history and the Court, at sentencing, applied the same to the statutory and guideline law resulting in a mandatory minimum sentence of 15 years of imprisonment. Moreover, breach of the plea agreement by the Government is not one of the three exceptions which the Court advised petitioner. Therefore, even if facts existed to support it, petitioner waived his right to bring that claim. Therefore, relief on that asserted ground should be denied.

Moreover, as already demonstrated, the claim that the Court exceeded the statutory maximum

---

[3]No claim is asserted that the sentence was imposed for an unconstitutionally impermissible purpose. It is therefore unnecessary to discuss this unwaived post conviction claim.

sentence is not factually supported and should be denied.

However, because petitioner did not validly waive his right to bring his ineffective assistance of counsel claims, they will be given full consideration.

**C.** **Ineffective Assistance of Counsel**

**Ground 2(a): Whether counsel was ineffective at the plea hearing for failing to prevent the miscarriage of justice that occurred when the plea agreement was amended and petitioner was not given sufficient time to fully review and understand it.**

Petitioner alleges that counsel was ineffective at the plea hearing, when only "moments before" his plea hearing began, he received a revised plea agreement and was given insufficient time in which to comprehend the agreement and its consequences.[4] Petitioner asserts that the amended plea agreement made "no mention of an ACC enhancement" and that an "effective attorney would have asked for the Rule 11 hearing to be postponed to provide him sufficient time to analyze, then discuss, said paragraph with his client." (Dkt.# 40 at 18 - 19). In his reply to the Government's response, petitioner contends he "believed the reason for the amended plea agreement was to correct a clerical error," and alleges that his attorney was ineffective for "not explaining the consequences of . . . [the] plea agreement." Petitioner contends that he never knew, until he received his PSR, that he could be exposed to a 15-year mandatory minimum sentence, and that this lack of understanding rendered his plea involuntary.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court of the United States established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. The first prong of the test requires that the

---

[4]The amended plea agreement contained a change to one sentence in the stipulation paragraph addressing the sentence he could receive, based on the determination of his prior felony convictions and whether any of them constituted "crimes of violence."

petitioner demonstrate that counsel's performance was deficient and "fell below an objective standard of reasonableness." Strickland at 688. The second prong requires the petitioner to show that the deficient performance prejudiced the defense. Id. at 687. In order to satisfy the prejudice requirement of the two-prong test set forth in Strickland, defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Lockhart v. Fretwell, 506 U.S. 364 (1993).

In addition, "a defendant who alleges ineffective assistance of counsel following the entry of a guilty plea has an even higher burden to meet." Hill v. Lockhart, 474 U.S. 52, 53-59 (1985). In the case of a guilty plea, the defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985) (footnote omitted); Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland 466 U.S. at 694.

It is further noted that a Court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance. Strickland 466 U.S. at 689-90. Moreover, there are no absolute rules in determining what is reasonable performance. See Hunt v. Nuth, 57 F.3d 1327, 1332 (4th Cir. 1995) (counsel's representation is viewed on the facts of a particular case and at the time of counsel's conduct).

Here, petitioner alleges that he

> was not aware of being classified as an Armed Career Criminal . . . and its consequences until he read his presentence report.[5] ACC was not stated or referred

---

[5] The Presentence Investigation Report was prepared on May 16, 2008 and disclosed to the parties on May 20, 2008, forty-two days before the sentencing hearing. (Dkt.# 31 at 1).

to in said plea agreement, nor presented in Petitioner's Rule 11 hearing.  The only slight inference made to sentence enhancement (without mentioning ACC) is stated in said plea agreement on page 4, paragraph 10, and during Petitioner's plea hearing (Plea TR. Pages 15 -16, 4/02/08).

(Dkt.# 40 at 7).

The record refutes petitioner's claim.  At the April 2, 2008 plea hearing, as the AUSA was summarizing and explaining the amended plea agreement in open court, he explained the reason for plea agreement's revision:

> MR. PERRI: . . . Your Honor, what you have before you now is the amended plea agreement.  It was necessary today to make a slight change to the language of the stipulation paragraph, and when we come to that, I'll point it out and discuss it for the Court.  That is the only change that was made to the plea agreement that you had previous to today . . . Paragraph 10 sets forth the stipulation paragraph between the parties. It is the second sentence, your Honor, of the stipulation paragraph that constitutes the change from the original version of the plea agreement.
>
> Some information yesterday, your Honor, came to my attention regarding the defendant's prior criminal history and, particularly, I received some reliable documentation regarding his prior convictions.  And the Guideline that applies with respect to gun cases, your Honor, is 2K2.1 and his base offense level will be dependent on whether or not he has any prior felony convictions which constitute "crimes of violence."  This documentation that I received yesterday suggest that, perhaps, he does have such a prior conviction. So I felt it appropriate to change that. I discussed it with Mr. Yeager last Friday[6] and we discussed it yesterday and everybody is on board with respect to that.  And I realize that the Court would, of course, apply the correct Guideline subsection based on the PSR, regardless of what the stipulation says, but I really try to make sure that my stipulations paragraphs reflect my best understanding of the facts . . . Paragraph 10 also says that the Court will make its own determination with the help of the presentence report and is not bound by the above stipulation or required to accept the same.

Dkt.# 36 at 8 - 9.

Clearly, petitioner was aware that the revision to the plea agreement was not merely an

---

[6] "Last Friday,"according to the calender for the year 2008, was March 28, 2008, five days before the plea hearing.

inconsequential correction of a clerical error.   Further, later during the Rule 11 colloquy, this

exchange was had:

> THE COURT: And do you understand that this Court is not going to be able to determine what sentence applies in your case until a later date when I have received the presentence report, you have received it, gone over it with Mr. Yeager, made objections to it if you wished, and the government has had a chance to do the same thing; do you understand that?
>
> THE DEFENDANT: Yes, I do, your Honor.
>
> THE COURT: And do you understand that, also, under a concept known as relevant conduct, that this Court in determining the total offense level for sentencing purposes under the advisory Guidelines may take into account any conduct or circumstances or injuries relevant to the crime of which you have been convicted; do you understand that?
>
> THE DEFENDANT: Yes, I do.
>
> THE COURT: And do you understand along the lines that Mr. Perri was discussing in his summary of the amended plea agreement, that your sentence could be enhanced if there were certain previous convictions, including those as a crime of violence. Do you understand that?
>
> THE DEFENDANT: Yes, I do.
>
> THE COURT: Do you understand, also, that after I have determined what advisory Guidelines apply in your case, that I do have the authority, at least in some circumstances, to vary or depart from the advisory Guidelines and to impose a sentence that is either more severe or less severe than that called for by the advisory Guidelines; do you understand that?
>
> THE DEFENDANT: Yes, I do.

Id. at 15 - 16.

"[I]f the information given by the court at the Rule 11 hearing corrects or clarifies the earlier

erroneous information given by the defendant's attorney and the defendant admits to understanding

the court's advice, the criminal justice system must be able to rely on the subsequent dialogue

between the court and the defendant." <u>United States v. Lambey</u>, 974 F.2d 1389, 1395 (4th Cir. 1992) (en banc), <u>cert. denied</u>, 513 U.S. 1060 (1994). "'Misadvice respecting sentencing possibilities' could not be a 'but for' cause of a guilty plea where the plea is 'based on risk information given. . . by the sentencing court.'" <u>United States v. Foster</u>, 68 F.3d 86, 88 (4th Cir. 1995) (citing <u>United States v. Craig</u>, 985 F.2d 175, 179-180 (4th Cir. 1993)).

The undersigned rejects petitioner's contention. First, petitioner cannot establish prejudice based upon sentencing. The stipulation in the plea agreement, which was accepted by the Court for sentencing, resulted in an enhancement to petitioner's sentence, giving him a total offense level of 30 after a reduction of three levels for acceptance of responsibility. His criminal history category was VI and the mandatory minimum sentence was 180 months, or fifteen years. Petitioner received the lowest end of the guideline range. Petitioner's sentence is a direct result of his own criminal history.

Second, the Rule 11 hearing clarified any misadvice regarding sentencing. On two separate occasions during the Rule 11 colloquy petitioner was advised, and acknowledged under oath, that he understood that a specific sentence was unknown at that time.

As set forth *supra,* the Government fully explained the reason for the amendment to the plea agreement at the Rule 11 hearing, before petitioner ever entered his plea. Further, it appears that discussions of the reason for the change, (i.e., the recent discovery of petitioner's prior "crimes of violence" felony convictions) had likely been underway between the parties for at least five days before the plea hearing. The PSR was disclosed to the parties 48 days after the plea hearing. Petitioner's claim that he was unfairly surprised by the ACC sentence enhancement that counsel was ineffective for failing to explain has no merit. Petitioner has not proved that counsel's performance

was unreasonable, nor can he prove prejudice. This claim should be denied.

**Ground 2(b):** Whether counsel was ineffective at the sentencing hearing for failing to fully investigate the predicate offenses that qualified petitioner for the ACC enhancement.

Petitioner claims that counsel performed an inadequate investigation into his criminal history, failing to "compile pertinent information on the predicate offenses" and therefore, his argument at sentencing was "weak . . . at best." He specifically alleges that counsel did not request certain transcripts from the Circuit Court in Ohio County, West Virginia regarding his prior criminal proceedings, implying that counsel lied about having requested them. Further, he claims that "counsel should have presented arguments to eliminate one or both burglaries[.]" He argues that his prior burglaries should be viewed as a crime spree and thus consolidated into one offense.

Defense counsel has a duty to conduct a pretrial investigation that is "reasonable [ ] under prevailing professional norms." Strickland v. Washington, 466 U.S. 668, 688 (1984). A decision not to investigate "must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Id. at 691; see also Byram v. Ozmint, 339 F.3d 203, 209 (4th Cir. 2003). Counsel's performance is to be evaluated "from counsel's perspective at the time of the alleged error and in light of all the circumstances and the standard of review is highly deferential." Kimmelman v. Morrison, 477 U.S. 365, 381 (1986).

Here, upon receipt of the PSR, counsel immediately attempted to investigate petitioner's prior crimes to determine whether they constituted 'crimes of violence,' as evidenced by the May 20, 2008[7] letter from counsel to the Clerk of the Ohio County Circuit Court, attached as Exhibit B

---

[7] May 20, 2008 was the date the PSR was disclosed to the parties. (Dkt.# 36 at 1).

to petitioner's memorandum of law in support of his §2255 motion.[8] Further, the sentencing hearing transcript reveals that counsel was very well acquainted with the details of petitioner's criminal history, as indicated by the four objections he vigorously presented on petitioner's behalf, contesting petitioner's status as an Armed Career Criminal based on the particular circumstances of the prior crimes.[9] Despite counsel's efforts, the Court overruled them all (Dkt.# 37 at 25), finding that the predicate offenses to prove Armed Career Criminal status had been established. Merely because the Court did not accept counsel's argument does not render his performance ineffective. Petitioner's criminal history triggered the Armed Career Criminal enhancement, not any action or inaction on counsel's part.

Furthermore, petitioner was uniquely situated to timely, fully, and accurately advise defense counsel and his probation officer of the details of his extensive thirty-two year criminal history, preventing any delay in ascertaining whether the ACC enhancement applied to him. Petitioner's criminal offenses were committed over a time span exceeding three decades, in four counties and two states, complicating any easy compilation. (PreSentence Investigation Report, Dkt.# 31 at 11 - 21). As the Government noted, petitioner's claim in this regard arguably concedes the fact that he failed to fully apprise counsel of his true criminal history.

Furthermore, petitioner does not offer any evidence that counsel failed to investigate, or was deficient in any manner prior to the Rule 11 hearing. In fact, under oath, at the Rule 11 colloquy, where the Court found that petitioner made a voluntary and counseled plea, petitioner stated that his

---

[8] In the letter, counsel requested the name of the court reporter who would have covered the hearing, so that he could obtain a copy of the sentencing hearing transcript.

[9] One of counsel's objections was one that petitioner accuses him of being ineffective for not making: that his prior burglaries should be considered one "crime spree" and should, therefore, only count as one crime.

counsel did a good job representing him and that counsel did not leave anything undone. Hence, petitioner does not show that counsel failed to investigate, was deficient, or that petitioner was prejudiced to support a claim of ineffective assistance of counsel. Nor has petitioner has alleged that but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. Relief should be denied.

**Ground 2(c): Whether, at sentencing, counsel was deficient for failing to object when petitioner received a 15-year sentence after being promised that the maximum sentence he could receive was 10 years.**

Petitioner contends that counsel's representation at the sentencing hearing was ineffective, because counsel permitted his sentence to be unconstitutionally enhanced by consideration of prior felony convictions that determined him to be an Armed Career Criminal.

Not only does petitioner's claim have no support in the law, the facts he alleges are not supported by the record. Although petitioner signed a plea agreement that stated that the maximum sentence he could receive was ten years, paragraph 10 of the plea agreement also stipulated, in pertinent part, that

> [t]he parties agree that the defendant's Base Offense Level will be determined in accordance with reliable information about the defendant's prior felony convictions and will depend on whether any of those constitute qualifying "crimes of violence" s contemplated by U.S.S.G. § 2K2.1(a)(2) and (a)(4)(A) and Application Note 10 . . . The parties understand that, pursuant to Section 6B1.4(d), the Court will make its own determination with the help of the pre-sentence report and is not bound by the above stipulation or required to accept same. The defendant understands and agrees that, should the Court not accept the above stipulation, he will not have a right to withdraw his plea.

Dkt.# 23 at 4.

Further, the April 1, 2008 letter from the AUSA to defense counsel that petitioner attached to his Supplemental Motion as support for the alleged breach of the plea agreement states that

**. . . The second matter is the one that I brought to your attention when we spoke early on Monday morning.**[10]  **If you recall, I advised you of the possibility that one or more of the defendant's prior felony convictions might qualify as "crimes of violence" as contemplated in U.S.S.G. § 2K2.1(a)(4)(A) or (a)(2). I was having a hard time ascertaining the details of the defendant's criminal history and, given the time constraint occasioned by the 30 day rule, could not delay longer. I explained that I had drafted the Plea Agreement Stipulation Paragraph to incorporate an assumption that the defendant had no qualifying priors and, therefore, his Base Offense Level would be 14. I explained that, if the defendant *did* have a qualifying prior conviction, his Base Offense Level would be 20 (or 24, if he has two such priors) . . . I advised that, if it could be determined that the defendant did have a qualifying prior, it might be necessary to amend the Plea Agreement. I asked you to please advise the defendant of this possibility.** Today, I received some reliable documentation regarding the defendant's prior convictions . . [he] has a Burglary conviction from Monroe County, Ohio (January, 1994) and a Burglary conviction from Hancock County (December, 1994). Based on prior experience, I know that a Burglary conviction will qualify as a "crime of violence" as contemplated by the Guidelines if it is not too old . . . I believe that the Ohio conviction satisfies the specifications of § 4A1.2(e). I'm not sure about the West Virginia one. It is my experience that, even if we do not amend the Plea Agreement, the Court will apply the correct Guidelines subsection regardless of the Stipulation between the parties.

(Dkt. 57, Exh. C at 1 - 2) (emphasis added).

When petitioner entered his plea in open court, each paragraph of the amended plea agreement was read aloud. Petitioner testified that: he and his counsel had reviewed the agreement before he signed it; he understood that his maximum sentence could be no more than the maximum of the statute of conviction; that the sentence he received might be different than that estimated by his counsel; and that no one could predict the length of his sentence until the PSR was completed. When asked if he thought his attorney had adequately and effectively represented him, petitioner stated "[y]es, he most certainly has." (Dkt.# 36 at 33). He also said that he was completely satisfied with his counsel, that his lawyer had done a good job, had left nothing undone that he thought should

---

[10] Monday would have been May 31, 2008, the day before the letter was written.

have been done, nor had he done anything improperly.   He denied that he or his attorney had found

any defense to the charge.  (<u>Id</u>.).

Contrary to the petitioner's claim that his attorney did not object to the decision by the Court

to enhance his sentence,  the sentencing hearing transcript clearly reflects that counsel did, in fact,

argue vigorously for the lowest possible sentence with no Armed Career Criminal enhancement. (<u>Id</u>.

at 6 - 14). Therefore, there is absolutely no basis for finding any deficiency on the part of counsel.

Petitioner has neither demonstrated that counsel's performance fell below an objective

standard of reasonableness, or that he was prejudiced by anything counsel did or failed to do.  Nor

has he shown that had counsel done anything otherwise, that the result of the proceeding would have

been any different.  Because petitioner fails to make the requisite showing, or to demonstrate that

a fundamental miscarriage of justice would occur if his claims were not considered on the merits,

he cannot prove either prong of the <u>Strickland</u> analysis and has failed to prove his claim by the

preponderance of evidence required.  Further, he has not claimed that had counsel not made his

alleged errors, he would not  have pled guilty but would have insisted on going to trial, so he cannot

sustain his burden under  <u>Hill v. Lockhart</u>, 474 U.S. 52 (1985).  This claim should be denied.

**<u>Ground 2(d)</u>: Whether, at sentencing, counsel was ineffective for failing to object to the miscarriage of justice that occurred when petitioner's plea was rendered involuntary by the Government's breach of the plea agreement.**

Petitioner contends that his plea was rendered involuntary and unknowing when the

Government "breached the plea agreement" by not giving him the  ten-year sentence he expected,

but rather, permitted him to be sentenced as a Armed Career Criminal with a fifteen-year mandatory

minimum sentence.  He informs the Court that "[w]hether an agreement has been breached is

determined according to the Law of Contracts" (Dkt.# 40 at 12) and asks the Court to grant him

"specific performance of prison [sic] term not to exceed ten (10) years as stated in Petitioner's Plea Agreement and Presentence Report." (Id. at 5).

Though plea agreements are generally interpreted under the law of contracts, the constitutional basis of the defendant's "contract" right and concerns for the honor and integrity of the government require holding the government responsible for imprecisions or ambiguities in the agreement. U.S. v. Dixon, 998 F.2d 228, 231, 1993 U.S. App. LEXIS 16238 (1993) *quoting* United States v. Harvey, 791 F.2d 294, 300-301 (4th Cir. 1986). As in ordinary contract law, the burden of proving the breach is on the party asserting it, in this case the defendant. U.S. v. Conner, 930 F.2d 1073, 1076 (4th Cir. 1991).

Contrary to petitioner's argument, his plea agreement makes no promise of a ten-year sentence. Although Paragraph 2 of the plea agreement specified that the maximum sentence for the felon in possession of a firearm charge was ten years, Paragraph 10 stipulates, in pertinent part, that:

> . . . The parties agree that the defendant's Base Offense Level will be determined in accordance with reliable information about the defendant's prior felony convictions and will depend on whether any of those constitute qualifying "crimes of violence" as contemplated by U.S.S.G. § 2K2.1(a)(2 and (a)(4)A) and Application Note 10 . . . . The parties understand that, pursuant to Section 6B1.4(d), the Court will make its own determination with the help of the -re-sentence report and is not bound by the above stipulation or required to accept same. The defendant understands and agrees that, should the Court not accept the above stipulation, he will not have the right to withdraw his plea.

Dkt.# 23 at 4.

As has been explained *supra,* this was thoroughly explained to petitioner at the Rule 11 hearing and he indicated his understanding of the fact that his sentence might be higher or lower, and that at that point in time, no one could determine what it would be. He entered his plea anyway, fully apprised of his potential exposure to a higher sentence should the investigation into his criminal

history prove fruitful. Even after he received the PSR, he never attempted to withdraw his plea.

Since there was never a promise of a ten-year sentence to be broken, no breach of the plea agreement occurred, and thus petitioner's plea could not be considered unknowing and involuntary. Accordingly, there was no miscarriage of justice to which counsel could object. Since petitioner has not demonstrated counsel's performance was defective, he cannot prove prejudice. Petitioner has not claimed that had been explicitly informed of the fifteen-year mandatory minimum sentence he would not have pled guilty but would have proceeded to trial. This claim should be denied.

**Ground 2(e): Whether, at sentencing, counsel failed to argue for a downward departure from the sentencing guidelines based on petitioner's substantial assistance, a violation of his due process rights.**

Petitioner claims that counsel was ineffective because he "failed to prompt the Prosecutor to write a § 5K1.1 motion which would ask the court for a downward departure for providing substantial assistance to authorities." (Dkt.# 57 at 3). In purported support of his claim that he did in fact provide substantial assistance, he attaches a March 30, 2008 letter from the AUSA to defense counsel stating, in pertinent part:

> Of course, as I have mentioned to you on the phone *it is yet to be determined whether the defendant will provide adequate assistance* to federal, state, and local authorities to earn a 5K or Rule 35 motion. I would say at this point, however, that we are pleased with his willingness to cooperate and provide information.

(Dkt.# 57, Exh. B) (emphasis added).

Petitioner's argument indicates a misunderstanding of how a motion for downward departure for substantial assistance works. United States Sentencing Guidelines § 5K1.1 states: "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart

from the guidelines." U.S.S.G. § 5K1.1.

A motion under § 5K1.1 for downward departure can only be made by the Government, and it is only made when, in the estimation of the Government, it has been earned. Such a motion is only made after assistance has been rendered and evaluated by the Government. <u>U.S. v. Chavez</u>, 902 F.2d 259, 267 (4th Cir. 1990).

As the Government's response noted, although defense counsel "did everything within his power to position defendant to be able to provide substantial assistance," petitioner in fact "never rendered any assistance." (Dkt.# 59 at 2-3). Apparently, despite petitioner's willingness, "law enforcement agencies, in the exercise of their legitimate discretion in such matters, opted not to avail themselves of . . . petitioner's offer to provide investigative assistance." (<u>Id</u>.). The letter petitioner attaches does not show that substantial assistance was provided, merely that petitioner was willing to provide it. In any case, the motion was not defense counsel's to make, and he cannot be considered ineffective for not having made it. Since petitioner did not earn and therefore was not entitled to a downward departure, counsel could not be considered ineffective for not arguing for it. Further, petitioner cannot show prejudice or that a fundamental miscarriage of justice will occur if this claim is not considered. Relief should be denied.

**<u>Ground 2(e)</u>: Whether counsel failed to file a notice of appeal on his behalf after promising to do so.**

Here, petitioner asserts that he requested that his counsel file a Notice of Appeal because he objected to the ACC enhancement to his sentence. Petitioner has attached an affidavit to his § 2255 motion asserting that counsel "said that he would appeal the sentence, which he did not. He also told me that my case would automatically go to a higher court for review, and if I wasn't

supposed to get the ACCA [sic] they would take it off me." (Dkt.# 40, Exh. A at 3).

The Government contends that 1) the record does not reflect that petitioner ever requested that his counsel file a notice of appeal and 2) petitioner has produced no written document memorializing either a request by him or promise by counsel to do so. The Government does concede that it is unaware of any conversations petitioner and his counsel may have had on the subject, and suggests that an evidentiary hearing be held on the issue if the Court believes that petitioner's claim on the issue is legitimate.

As held in United States v. Poindexter, 492 F.3d 263, 273 (4th Cir. 2007) an evidentiary hearing is required in such cases to determine whether the petitioner unequivocally instructed his attorney to file a notice of appeal or, if his attorney was not so instructed, the court will determine if petitioner met his burden of showing that: (1) his attorney had a duty to consult under Roe v. Flores-Ortega, 528 U.S. 470 (2000); (2) his attorney failed to fulfill his consultation obligations; and (3) he was prejudiced by his attorney's failure to fulfill these obligations.

The Fourth Circuit Court of Appeals has held that "a criminal defense attorney's failure to file a notice of appeal when requested by his client deprives the defendant of his Sixth Amendment right to the assistance of counsel, notwithstanding that the lost appeal may not have had a reasonable probability of success." United States v. Peak, 992 F.2d 39, 42 (4th Cir. 1993). In rendering this decision, the Court opined:

> Persons convicted in federal district courts have a right to a direct appeal. Coppedge v. United States, 369 U.S. 438, 82 S.Ct.917, 8 L.E.2d 21 (1962). In addition, the Sixth Amendment right to counsel extends to the direct appeal, Douglas v. California, 372 U.S. 353, 83 S.Ct. 917, 8 L.Ed.2d 811 (1963), and it obligates the attorney to file the appeal and identify possible issues for the court even if, in the attorney's opinion, those issues are not meritorious. Anders v.

<u>California</u>, 386 U.S.738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

<u>Id</u>. at 41.

In <u>Roe v. Flores-Ortega</u>, 528 U.S. 470 (2000), the United States Supreme Court recognized that "[i]f counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." <u>Id.</u> at 478.

Further, the Fourth Circuit maintains that counsel must file an appeal if instructed to, even if appealing would seem contradictory to client's best interest:

> "[A]n attorney is required to file a notice of appeal when unequivocally instructed to do so by his client, even if doing so would be contrary to the plea agreement and harmful to the client's interests. In this case, although there is a real possibility that [defendant] will face a higher sentence or even charges related to the [ ] incident if he decides to appeal, his right to appeal cannot be thwarted by attorney error."

<u>United States v. Poindexter</u>, 492 F.3d at 273.

Accordingly, because the petitioner's motion and the Government's response do not conclusively establish that petitioner is entitled to no relief, I find that an evidentiary hearing is necessary to determine whether petitioner requested that his attorney file an appeal and whether counsel ignored or refused such instructions. <u>See</u> 28 U.S.C. § 2255 (providing in pertinent part that "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."); <u>See also</u> <u>United States v. Witherspoon</u>, 231 F.3d 923 (4th Cir. 2000).

An evidentiary hearing, **solely on the issue of whether petitioner instructed his counsel**

**to file an appeal** shall be held at 11:00 a.m., 5 November 2010 in the United States Magistrate Judge Courtroom, 3rd Floor, U.S. Courthouse, Clarksburg, West Virginia.

Unless request is made and a writ is issued commanding petitioner to be brought before the Court, petitioner shall appear by telephone from his place of incarceration. Any other party, counsel or witness who resides or whose principal office is more than 40 miles from the Clarksburg point of court may appear by telephone. The petitioner, by counsel shall shall set up the conference call through the Clerk of Court office.

Federal Public Defender, Brian Kornbrath, is appointed to represent petitioner at the evidentiary hearing.

## IV. RECOMMENDATION

For the foregoing reasons, the undersigned recommends that Petitioner's §2255 motion be **DENIED and dismissed with prejudice** from the docket in all respects except for the claim of ineffective assistance of counsel based on the allegation that petitioner requested that his attorney file an appeal and his counsel ignored or refused his instructions.

Further, the undersigned recommends that:

1) petitioner's September 23, 2009 Letter Motion Requesting Copies of all Documents Including his Name, Pursuant to the Freedom of Information Act (Dkt.# 50);

2) his June 23, 2010 Motion for Discovery (Dkt.# 60);and his

3) request for specific performance of his plea agreement be **DENIED** as moot.

**Within fourteen (14) days** after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those

28

portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985): United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record as applicable.

DATED: August 24, 2010.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE